## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| ISRAEL GOMEZ, Individually and for Others Similarly Situated, | Case No. 4:20-cv-00125 |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| SGS NORTH AMERICA INC. | |
| Defendant. | FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. SGS North America Inc. (SGS) has failed to pay Israel Gomez (Gomez) and other workers like him, overtime as required by the Fair Labor Standards Act (FLSA).

2. Instead, SGS pays Gomez, and other workers like him, the same hourly rate for all hours worked, including those in excess of 40 in a workweek.

3. Gomez brings this collective action to recover unpaid overtime and other damages.

### JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

6. Gomez worked for SGS in this District in Harris County, Texas.

7. SGS also conducts substantial business in this District.

## THE PARTIES

8. Gomez performed work for SGS as a Plant Insulation Inspector from approximately April 2019 through July 31, 2019. Throughout his time with SGS, he was paid straight time for overtime hours worked. His consent to be a party plaintiff is attached as **Exhibit A**.

9. SGS is headquartered in Rutherford, New Jersey.

10. SGS is a company doing business throughout the United States. SGS may be served by serving its registered agent: Registered Agent Solutions, Inc., 1701 Directors Blvd. #300, Austin, TX 78744.

## COVERAGE UNDER THE FLSA

11. At all relevant times, SGS was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

12. At all relevant times, SGS was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

13. At all relevant times, SGS was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

14. At all relevant times, SGS had an annual gross volume of sales made in excess of $1,000,000.

15. At all relevant times, Gomez and the Putative Class Members (defined below) were engaged in commerce or in the production of goods for commerce.

**THE FACTS**

16. SGS is a member of SGS Group, "the world's largest certification and inspection company." *See generally* https://www.sgsgroup.us.com/en/our-company/about-sgs/sgs-in-brief/sgs-in-north-america (Last visited January 9, 2020).

17. To provide services to many of its customers, SGS provides inspectors in a wide array of industries, including agriculture, transportation, consumer goods, and oil and gas.

18. Many of these individuals worked for SGS on an hourly basis and make up the Putative Class.

19. For example, Gomez worked for SGS as a Plant Insulation Inspector from approximately April 2019 through July 31, 2019. Throughout his employment with SGS, SGS paid him an hourly rate with no overtime compensation.

20. While exact job titles and job duties may differ, SGS subjects these employees to the same or similar illegal pay practices for similar work.

21. As a Plant Insulation Inspector, Gomez's primary job duties included inspecting the installation of a new unit at the refinery, observing deficiencies or deviations from the customer's specifications, inspecting the insulation thickness and sealant types and completing weekly job reports.

22. Gomez reported to SGS's office in Deer Park, Texas. SGS required Gomez to send his weekly job reports to SGS's Deer Park location.

23. When Gomez began his employment with SGS, SGS provided him safety equipment for the job site, including a safety harness. Gomez received his safety harness at SGS's Deer Park office.

24. Gomez performed inspections for SGS at its customer's, Total Petrochemicals USA Inc., refinery in Port Arthur, Texas.

25. The work Gomez performed was an essential part of SGS's core business.

26. During Gomez's employment with SGS while he was classified as an independent contractor, SGS and/or its client it contracted with exercised control over all aspects of his job. SGS did not require any substantial investment by Gomez for him to perform the work required of him.

27. SGS determined Gomez's opportunity for profit and loss.

28. Indeed, SGS and/or its client it contracted with controlled all the significant or meaningful aspects of the job duties performed by Gomez.

29. SGS ordered the hours and location Gomez worked, tools used, and rate of pay received.

30. No real investment was required of Gomez to perform his job. Gomez utilized safety equipment provided by SGS to perform his job duties.

31. Gomez did not provide the equipment he worked with on a daily basis.

32. Gomez did not incur operating expenses like rent, payroll and marketing.

33. Gomez was economically dependent on SGS during his employment.

34. SGS set Gomez's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for SGS.

35. Very little skill, training, or initiative was required of Gomez to perform his job duties.

36. The daily and weekly activities of Gomez and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by SGS and/or its clients. Virtually every job function was pre-determined by SGS and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. Gomez and the Putative Class Members were prohibited from varying their job duties outside of these pre-determined parameters.

37.	The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training.

38.	The Putative Class Members did not have any supervisory or management duties.

39.	For the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to inspecting job sites and equipment.

40.	At all relevant times, SGS maintained control, oversight, and direction of Gomez and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

41.	Gomez and the Putative Class Members did not have the authority to hire and/or fire other SGS employees or its clients' employees.

42.	The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

43.	Based on the job duties they performed, Gomez and the Putative Class Members are clearly non-exempt employees under the FLSA.

44.	SGS knew Gomez and the Putative Class Members worked more than 40 hours in a week.

45.	Indeed, SGS required Gomez and the Putative Class Members to work substantial overtime without overtime compensation.

46.	Gomez reported the hours he works to SGS on a regular basis.

47.	Gomez was not guaranteed a salary.

48.	If Gomez worked fewer than 40 hours in a week, he was only paid for the hours worked.

49.	Gomez regularly worked over 40 hours in a week.

50. In fact, Gomez routinely worked five 10-hour shifts per week. Gomez worked approximately 50 hours in a typical week.

51. Instead of paying overtime, SGS paid Gomez the same hourly rate ($40 per hour) for the hours he works over 40 in a work week.

52. The hours Gomez and the Putative Class Members (defined below) work are reflected in SGS's records.

53. Rather than receiving time and half as required by the FLSA, Gomez only receives "straight time" pay for overtime hours worked.

54. SGS's "straight time for overtime" payment scheme violates the FLSA.

55. SGS was and is aware of the overtime requirements of the FLSA.

56. SGS nonetheless fails to pay certain employees, such as Gomez, overtime.

57. SGS's failure to pay overtime to these workers was, and is, a willful violation of the FLSA.

## FLSA Collective Action Allegations

58. SGS's illegal "straight time for overtime" policy extends beyond Gomez.

59. It is the "straight time for overtime" payment plan that is the "policy that is alleged to violate the FLSA" in this FLSA collective action. *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006); *Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *5 (E.D. La. Nov. 7, 2014) (certifying "straight time for overtime" claim for collective treatment).

60. SGS pays hundreds of workers using the same unlawful scheme.

61. Any differences in job duties do not detract from the fact that these workers were entitled to overtime pay.

62. The workers impacted by SGS's "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

63. Therefore, the class is properly defined as:

**All employees of SGS who were, at any point in the past 3 years, paid the same hourly rate for hours worked over 40 in a work week (or "straight time for overtime.") (Putative Class Members).**

### COLLECTIVE CAUSES OF ACTION

64. Gomez incorporates all previous paragraphs and alleges that the illegal pay practices SGS imposed on Gomez were likewise imposed on the Putative Class Members.

65. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

66. Numerous other individuals, like Gomez, indicated they were paid in the same manner and were not properly compensated for all hours worked as required by the FLSA.

67. Based on his experiences and tenure with SGS, Gomez is aware that SGS's illegal practices were imposed on the Putative Class Members.

68. The Putative Class Members were all paid straight time for overtime and not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

69. SGS's failure to pay wages and overtime compensation at the rates required by the FLSA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

70. The specific job titles or precise job locations of the various Putative Class Members does not prevent collective treatment.

71. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

72. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

73. Gomez demands a trial by jury.

## PRAYER

74. Gomez prays for relief as follows:

    a. An Order designating the Putative Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b. For an Order pursuant to Section 16(b) of the FLSA finding SGS liable for unpaid back wages due to Gomez and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

    c. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

    d. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted this 13th day of January, 2020.

By: /s/ *Michael A. Josephson*
**Michael A. Josephson**
State Bar No. 24014780
Fed. Id. 27157
**Andrew W. Dunlap**
State Bar No. 24078444
Fed Id. 1093163
**Carl A. Fitz**
State Bar No. 24105863
Fed Id. 3158237
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
cfitz@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**